UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRAMESH UPRETY,<br><br>               Petitioner,<br><br>   v.<br><br>PAMELA BONDI, Attorney General of the United States, et al.,<br><br>               Respondents. | CASE NO. 2:25-cv-02443-JNW-MLP<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

Petitioner Pramesh Uprety, a citizen of Nepal, has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since January 17, 2023—just over three years. Uprety does not challenge his removal order or his removal to Nepal. Rather, he seeks a writ of habeas corpus under 28 U.S.C. § 2241, requesting: (a) immediate release from custody; (b) an order preventing re-detention absent changed circumstances, (c) an order preventing removal to a third country without notice and meaningful opportunity to respond; and (d) an order barring removal to any third country under Respondents' allegedly punitive removal policy.

For the reasons stated below, the Court GRANTS IN PART Uprety's petition.

## 2. BACKGROUND

Uprety is a citizen of Nepal who has lived in the United States since the late 1980s, when he entered the U.S. on a student visa at age 18. On January 12, 2023, he was convicted in the United States District Court for the District of Oregon of Social Security Fraud and Making a False Statement in Application for Use of a Passport. Uprety had assumed another person's identity and used it to procure passports and obtain government benefits. Rather than prison time, the court sentenced him to five years of probation—not incarceration. Dkt. No. 12-1.

Five days later, on January 17, 2023, ICE arrested Uprety and took him into immigration custody. On February 1, 2023, an immigration judge denied Uprety's request for release on bond, finding him subject to mandatory detention under 8 § U.S.C. 1226(c). On July 24, 2023, an immigration judge ordered him removed to Nepal. Dkt. No. 11 ¶¶ 7, 9. Uprety unsuccessfully appealed the removal decision to the Board of Immigration Appeals and subsequently petitioned the Ninth Circuit for review and for a stay of removal. *Id*. ¶¶ 10–12. The Ninth Circuit granted Uprety a stay during the pendency of his petition for review, but it ultimately dismissed his petition in part and denied it in part. *Id*. ¶¶ 12–13. On June 2, 2025, the Ninth Circuit's mandate issued—the stay of removal was lifted and Uprety's removal order became final. *Id*. ¶ 14.

The appeals process took more than two years—time Uprety spent detained. While his petition for review was pending in the Ninth Circuit, Uprety worked with

ICE to prepare a Travel Documents Request ("TDR") to send to Nepal's government. ICE Detention Officer ("DO") Cheng Liu's declaration provides the relevant timeline. *See* Dkt. No. 11. Once the Ninth Circuit lifted its stay of removal, ICE sent Uprety's TDR to Nepal, but it was denied on June 30, 2025, "due to insufficient information to issue a passport." Dkt. No. 11 ¶ 17. According to DO Liu, "[i]t was determined that ICE needs to resubmit the entire TDR." *Id.* ¶ 19. ICE represents that it "learned" of this rejection on December 11, 2025—more than *five months* after Nepal's June 30 rejection—and that it is now "actively" working to resubmit the request. Dkt. Nos. 10 at 4; 11 ¶ 19. The Government provides no explanation for the five-month delay between Nepal's rejection and ICE's discovery of that rejection, nor any timeline for when the resubmission might occur or when Nepal might respond. DO Liu does not explain any specific defects in Uprety's initial TDR, nor does he explain how ICE can correct the second TDR so that Nepal's government will be more likely to issue travel documents.

Uprety asserts that the Nepal's government has stopped issuing travel documents due to a recent coup. Dkt. No. 2 at 8. Uprety alleges that in October 2025, an ICE officer at NWIPC told Nepalese detainees that Nepal was not issuing travel documents due to political instability in the country. Dkt. No. 2 at 7. Uprety reports that officers told detainees to "find third countries" willing to accept them because Nepal was not accepting deportees. *Id* The Government does not contest these claims. Rather, DO Liu states, "There is no indication that the government of Nepal will not issue travel documents for its citizens at this time." Dkt. No. 11 ¶ 20.

The Government asserts that "ICE is only seeking removal to Nepal at this time." *Id.* ¶ 21.

## 3. DISCUSSION

**3.1    Legal standard.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**3.2    Continued detention violates Uprety's due process rights.**

Uprety argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699.

The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Uprety is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal order became final on June 2, 2025. Thus, the six-month presumptively reasonable period expired on December 2, 2025—the same day Uprety filed this petition.

Uprety has now been detained for approximately 35 months since ICE took him into custody.

The Government argues that the six-month period establish in *Zadvydas* "reflects the earliest moment" at which a noncitizen's detention could raise constitutional issues, suggesting that because the six-month period has only recently passed, detention remains lawful. Dkt. No. 10 at 5–6. The Court disagrees. The six-month period creates a presumption of reasonableness, not automatic immunity from review. Indeed, the *Zadvydas* framework requires courts to assess not only how long the petitioner has been detained, but whether removal is "reasonably foreseeable." 533 U.S. at 701. Here, the record demonstrates it is not.

Uprety has shown there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. Nepal denied Uprety's TDR for "insufficient information," and it is unclear what information was missing or whether the deficiency can be corrected. *See generally*, Dkt. No. 11. Moreover, as Uprety points out, the Government has failed to provide any estimated timeline for his removal. And it has not submitted a second TDR yet, even though Uprety's initial TDR was denied more than five months ago.

Nepal's instability casts further doubt on the Government's ability to remove Uprety in a timely manner. Uprety argues that the recent coup in Nepal has affected the country's issuing of travel documents, and he claims an ICE officer confirmed that Nepal was not issuing travel documents due to political instability— points that the Government fails to address. In short, Uprety has shown that the Government is not likely to remove him within the reasonably foreseeable future.

The Government has not rebutted Uprety's showing. It simply states that it plans to submit Uprety's entire application again, in effect starting the whole process over. The Government fails to explain how this second TDR will differ from the first. It does not identify Nepal's processes or policies for issuing travel documents or explain why its first attempt to obtain travel documents for Uprety failed.

DO Liu asserts that "[t]here is no indication that the government of Nepal will not issue travel documents for its citizens at this time." Dkt. No. 11 ¶ 20. But that assertion is unhelpful for at least two reasons. First, the Government's statement conflates "absence of evidence of refusal" with "evidence of cooperation." These are not the same thing. Under *Zadvydas*, the Government bears the burden of providing affirmative evidence that removal is reasonably foreseeable—not merely pointing to the absence of contrary evidence. This lack of confirmation is particularly concerning, given the Nepal's rejection of Uprety's first TDR and apparent lack of communication with ICE about Uprety's case. *See* Dkt. 11 ¶¶ 17–19.

Second, even if Nepal were currently issuing travel documents for its citizens, that fact alone says nothing about whether Nepal would accept Uprety any time soon. *Cf. Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). At most, the Government has shown that "there is at least some possibility" that Nepal might accept Uprety "at some point." *Abubaka v. Bondi*, No. 25-cv-1889-RSL, 2025 WL 3204369, at *5 (W.D. Wash. Nov. 17, 2025) (quoting *Nguyen v. Scott*, 796 F. Supp. 3d at 725). But as other courts in this district have

found, "[t]hat is not the same as a significant likelihood that [the petitioner] will be accepted in the reasonably foreseeable future." *Id.* (quoting *Nguyen*, 796 F. Supp. 3d at 725); *see also Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner). Ultimately, no evidence supports the Government's assertion that it can remove Uprety to Nepal in the reasonably foreseeable future.

Because there is no significant likelihood of removal in the reasonably foreseeable future, Uprety's continued detention is no longer authorized by statute and violates due process. He must be released.

**3.3   Re-detention requires changed circumstances.**

Uprety requests an order preventing re-detention absent changed circumstances. The Government does not address this request at all. *See* Dkt. No. 10. Without any re-detention standard, the Government could theoretically re-detain Uprety immediately after release, which would render the Court's order meaningless. The Court will not permit such an outcome.

This Court has inherent authority to fashion relief necessary to effectuate its habeas orders. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (federal have "broad discretion" in granting habeas relief "as law and justice require"). And upon release, Uprety will have a liberty interest in his continued freedom that due process protects. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Accordingly, to the extent that the Government seeks to revoke the release ordered by this Court and re-detain Uprety, any such decision must be supported by changed circumstances demonstrating a significant likelihood that Uprety may be removed in the reasonably foreseeable future. The mere passage of time or resubmission of the same travel document request that was previously rejected does not constitute such changed circumstances. Additionally, the Government must provide Uprety with adequate notice of the reasons for any proposed re-detention and a meaningful opportunity to respond before re-detention occurs.

This standard is consistent with the regulatory framework governing re-detention of noncitizens released on orders of supervision. *See* 8 C.F.R. § 241.13(i)(1)–(2) (permitting revocation of release and re-detention only where noncitizen violates conditions of release or where, "on account of changed circumstances," the Government "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future"); 8 C.F.R. § 241.13(i)(3) (requiring notice of reasons for revocation and "an initial informal interview promptly" to "afford the [noncitizen] an opportunity to respond"). That regulation reflects the agency's own determination of the process due to noncitizens facing re-detention after release—process this Court finds equally necessary here as a matter of due process and to effectuate this habeas order.

Other courts in this district have imposed similar requirements. *See e.g., Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026) ("prohibiting Respondents from redetaining

[petitioner] without adequate notice of the reasons for redetention and a meaningful opportunity to respond to those reasons"); *Yuksek v. Bondi*, No. 2:25-cv-02555-DGE-GJL, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (ordering that petitioner "shall not be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. § 241.13(i)(1)"). Given the Government's complete failure to oppose or even address this request, the Court sees no reason to depart from this approach.

### 3.4    Uprety's claims regarding third-country removal are premature.

Uprety also asks the Court to make findings related to third-country removal. He argues that (1) any such removal must comply with statutory and due process notice requirements, and (2) the Government's third-country removal policy is unconstitutionally punitive. Dkt. No. 2 at 17–19.

The Government represents that ICE is seeking removal only to Nepal. Dkt. No. 11 ¶ 21. The record shows no steps toward third-country removal for Uprety specifically. *Cf. Yuksek*, 2026 WL 60364, at *3 (granting relief where ICE had sent requests to Costa Rica, Panama, and Australia). And while Uprety's traverse requests an order "limiting [the Government's] ability" to remove him to a third country, it does not develop either claim. Dkt. No. 14 at 3. The Court declines to address these claims as unripe. *See Bui v. Scott,* No. 2:25-CV-02268-TMC, 2025 WL 3706796, at *4 n.1 (W.D. Wash. Dec. 22, 2025). Should circumstances change, Uprety may seek appropriate relief.

### 4. CONCLUSION

The Court GRANTS IN PART the petition for writ of habeas corpus. Dkt. No. 2. The Court ORDERS as follows:

1. Respondents must immediately RELEASE Petitioner from custody immediately. Petitioner remains subject to the conditions of his federal criminal probation in Case No. 3:22-CR-00116-SI-1 (D. Or.), which include conditions of supervision. ICE retains authority to impose additional conditions of supervision as appropriate under 8 U.S.C. § 1231(a)(3).

2. Respondents may not re-detain Petitioner without notice and an opportunity to be heard except as authorized by 8 C.F.R. § 241.13(i)(1).

3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

4. Nothing in this Order prevents Respondents from requesting the Government of Nepal to accept Petitioner's return.

Dated this 26th day of January, 2026 at 10:00 a.m.

Jamal N. Whitehead
United States District Judge